Ellison *v.* McCahill.

THOMAS J. ELLISON *et al.*, Respondents, *against* THOMAS J. McCAHILL, Appellant.

(Decided February 6th, 1882.)

By a written contract dated September 18th, 1877, M. agreed to purchase from defendant certain lots of land on 126th Street in the City of New York, and erect houses thereon, and, to enable him to do so, defendant agreed to loan to M. certain sums of money in five payments, of which four were to be advanced as different portions of the work should be completed, and the fifth on the completion of the whole. M. began the work, but before any payment under the contract became due to him, he assigned the contract, with the defendant's consent, to A., who proceeded with the work. Subsequently the plaintiffs contracted in writing with A. that they should furnish the materials and labor required for the plumbing work of the houses, and that A. should pay therefor by giving orders on the defendant for specific sums of money, each sum to be taken out of a specified payment "under the terms of the agreement made September 18th, 1877," between the defendant and M.; and such orders were signed by A., accepted by the defendant, and delivered to the plaintiffs. · Of these orders one requested the defendant to pay to the plaintiffs a certain sum " out of the fourth payment under the agreement of September 18th, 1877, between yourself and M., when that payment is reached, said amount being on account of plumbing work and material furnished on 126th Street houses," and was accepted by the defendant " to be paid only when fourth payment is reached as per contract between M. and myself and not otherwise." Another order was drawn in like form for a different sum out of the fifth payment, and was accepted in like terms " to be paid only when fifth payment is reached." The plaintiffs performed their contract with A.; but the latter never progressed with the work so far as to become entitled to the fourth and fifth payments under the original contract; and, after A. had finally suspended work, the defendant, having purchased the property at a sale under foreclosure of a mortgage, procured other parties to complete the houses substantially according to the contract with M. *Held*, in an action by the plaintiffs upon the two orders above mentioned, that they were not entitled to recover thereon from the defendant.

APPEAL from a judgment of the general term of the Marine Court of the City of New York affirming a judgment of that court entered upon the verdict of a jury and an order of that court denying a motion for a new trial.

Ellison *v.* McCahill.

In September, 1877, the defendant being the owner of four lots upon the north side of 126th Street, and west of the 7th Avenue, made a building contract with one McGown, by which McGown was to erect eight houses upon said lots, and the defendant was to loan to McGown during the course of the construction of said houses certain sums of money, and upon the completion of the houses the lots were to be conveyed to McGown and McGown was to execute mortgages back. The contract between the defendant and McGown contained certain specifications as to the buildings to be erected, and as to the advances which were to be made by the defendant to McGown as the buildings progressed—the number of payments being five; the third payment being due when all the plumbing and gas-fitting work was completed and the water and gas connections made so as to supply the same where required ; the fourth payment being due when the painting inside and outside of each and every house was completely finished ; and the fifth and final payment being when the buildings were completely finished in all respects.   And it was further provided that these payments were not to be made while there were any mechanics' liens filed, and if the work was unreasonably delayed by Mc-Gown, the defendant had the right to terminate the contract and foreclose McGown's interest by a sale at public auction, which sale was to be an absolute bar of all claims upon the part of McGown. The houses were to be completed to the satisfaction of the defendant and ready for occupation by the 1st of April, 1878. McGown commenced work upon the contract on the 19th of November, 1877.   Before any payment became due under the contract to him he assigned the contract to one William Archer, by and with the consent of the defendant.   William Archer thereupon undertook to complete the McGown contract with some modification as to the character of the work, which was agreed upon between Archer and the defendant. The plaintiffs in this action, being about to supply certain plumbing work and materials for said houses, applied to the defendant to know if he would accept the orders in suit of Archer, and upon receiving an acceptance of said orders they made their contract with Archer and completed the work ac-

cording to the modified terms agreed upon between Archer and the defendant. The orders were as follows :—

"New York, July 5th, 1878.

"Thos. J. McCahill, Esq.: Please pay to Ellison & Todd two hundred and fifty dollars out of the fourth payment under the contract of Sept. 18th, 1877, between yourself and Jas. McGown, when that payment is reached; said amount being on account of plumbing work and material furnished on 126th Street houses.

"William Archer."

Indorsed as follows :—

"Accepted, to be paid only when fourth payment is reached, as per contract between McGown and myself, and not otherwise.

Thos. J. McCahill."

"July 10th, 1878.

"New York, July 5th, 1878.

"Thos. J. McCahill, Esq.: Please pay to Ellison & Todd five hundred ($500) dollars out of fifth payment, under the agreement of Sept. 18th, 1877, between yourself and Jas. McGown, when that payment is reached, said amount being on account and in full for plumbing work and materials furnished on 126th Street houses.

"William Archer."

Indorsed as follows :—

"Accepted, to be paid only when fifth payment is reached, as per contract between McGown and myself, and not otherwise.

"Thos. J. McCahill."

"July 10th, 1878.

The plaintiffs, upon noticing the qualified acceptance of the defendant, asked him what the McGown contract was, and defendant replied, "Why, that is only a name; we drew up an agreement, but he has nothing to do with it now; it is

only a name." And he further said that he had sufficient money under the McGown contract to pay the orders.

In August, and after the completion of the plumbing work, the work upon the buildings was suspended by Archer, and the foreclosure of a mortgage upon the premises was commenced. The buildings were sold and were bought in by the defendant, and the mechanics who had filed liens, which were all for work done before the third payment became due, were paid the sum of upwards of $1,500, upon those liens.

Afterwards a new contract was entered into between the defendant and Van Alstyne & Smith, and the buildings were completed by Van Alstyne & Smith substantially according to the McGown contract.

The plaintiffs now bring this action upon these orders upon the ground that the money is due, because the houses have been completed; and having obtained a judgment at the trial term of the Marine Court, the same was affirmed at the general term ; and from such affirmance the defendant appeals to this court.

*Dewitt C. Brown*, for appellant.

*Freling H. Smith*, for respondents.

VAN BRUNT, P. J.—[After stating the facts as above.]— The ground upon which the plaintiffs in this action have recovered, is that the contingency under which the orders were made payable has occurred, namely, that the fourth and fifth payments have been reached as per contract between McGown and the defendant.

In considering this question, we must assume that the modifications in the performance of the work which were made between Archer and the defendant are applicable to the Mc-Gown contract; that where it was agreed between Archer and McCahill that a lighter pipe should be used than that which was required by the McGown contract, the doing the work with such lighter pipe must be considered as a compliance with the terms of the McGown contract. It is true that if we take

the precise language of the acceptance, it has become due, but the language of the order and the language of the acceptance must be read together. The circumstances under which the order was given, the person by whom the order was given, must also be considered; and the terms of the order are, on the part of Mr. William Archer, that Mr. McCahill is directed to pay, out of the fourth payment of the agreement of September 18th, 1877, between Thomas J. McCahill and James McGown, when that payment is reached,—which means that Mr. McCahill is to pay out of the money to become due on that payment; and under that order Mr. McCahill had no right or authority to appply any other money to the payment of that order than that which arose from that fourth payment itself. And when the defendant in this action accepted that order to be paid only when the fourth payment was reached, he accepted it precisely in the terms in which it was drawn, namely, that when that fourth payment became due to Mr. Archer, he was to apply so much of that money as the order called for, to the payment of the plaintiffs. But it may be said that in this construction of the order in question we assume facts which do not appear upon the face of the order. In answer to that suggestion it is sufficient to say that it is necessary for the plaintiffs to prove the consideration of the order, and in proving the consideration of that order all the facts which have been considered in aiding the construction of that order must necessarily appear, and consequently must affect the construction of the paper.

It is clear from a reading of the order, and in view of the circumstances of the case, the fourth payment being the payment due to Mr. Archer that the intention was that Mr. Archer should apply so much of that money coming due to him to the payment of Ellison & Todd's claim as the order called for, and that none of the parties had any idea that the money should come from any other source, or that it should become due and payable if Mr. Archer did not complete the McGown contract with the modifications consented to upon the part of the defendant.

And the fact that the plaintiffs had performed their entire work, and that it had been entirely completed, does not give

them any other or better rights than Mr. Archer had to claim the fourth payment from the defendant in this action, because it is to be noticed upon an examination of that contract that the fourth payment has nothing whatever to do with the plumbing work under the McGown contract which was done by the plaintiffs in this action.

The $1,500 which constituted the fourth payment was to become due when the painting inside and outside of each and every house was completely finished. The third payment was to become due when the plumbing and certain other work was done, and the claim of the plaintiffs in this action to ask for any money on account of their work is expressly deferred to the payment which was to accrue to Mr. Archer subsequent to the payment which accrued after the finishing of the plumbing work.

Now, it is clear under these circumstances that it was not the intention of these parties that the plaintiffs in this action, as soon as they had performed their work, should be entitled to receive any money which was to become due to Mr. Archer under this contract; but on the contrary their claim was deferred until another payment became due subsequent to that which became due on the completion of the plumbing.

Upon an examination of all the evidence in this case it seems to be impossible to come to any other or different conclusion than that it was an assignment by Archer of money to become due to him under that contract, which was accepted by the defendant in this action.

If the position of the plaintiffs in this action is correct, then, if they had never complied with their contract with Archer, and before their work had been finished the work had been abandoned by Archer, and the defendant in this action had done it himself, they would be entitled to recover upon this acceptance, because its condition had been fulfilled. It does not seem possible to give a construction to these papers which would lead to that result, and the conclusion to which it seems to me we must necessarily arrive is, that the condition for the payment of those orders has never been fulfilled, and that the plaintiffs have no right of action against the

Ellison *v.* McCahill.

defendant upon them : that the orders were an appropriation out of the fourth and fifth payments which were to become due to Archer upon his performance of the McGown contract with the modifications agreed to by the defendant.

It is urged by the counsel for the respondent that the acceptance by defendant of the orders, he at the time of the acceptance having sufficient funds in his hands payable on the contract, created an equitable assignment in favor of the plaintiffs of a sufficient amount of said funds to pay the orders, if they completed their contract and earned the money.

It is sufficient in answer to this proposition to say that the orders do not so read : the orders say, payable out of the particular payments which were to become due under the McGown contract; and Mr. McCahill had no right or authority to appropriate any moneys which had previously become due under that contract, to the payment of those orders, and only to apply so much of the fourth and fifth payments when they became due under the contract, as should be sufficient to satisfy the orders.   The fact that he had money due upon previous payments sufficient to meet the amount of those orders has nothing to do with the question, because the orders were not drawn against any such funds, and were not accepted as against any such funds.

It seems to us, therefore, that the plaintiffs herein had no cause of action, and that the judgment must be reversed and a new trial ordered, with costs to abide the event.

BEACH, J.—On September 18th, 1877, the defendant, being the owner of four lots in this city, made a contract with one McGown, whereby the defendant agreed to sell him the lots, for the sum of thirteen thousand dollars, payable as hereafter stated.   McGown agreed to buy and forthwith begin building eight dwelling houses upon the property.   To enable McGown to do this, the defendant agreed to loan him sixteen thousand dollars, payable in different sums, at different times, regulated by the advance of the buildings toward completion ; the final payment of four thousand dollars to be made when they were finished in all respects, yards graded, curbs and

gutters set, walks flagged and fences up.   When all was com-
pleted, the defendant was to give McGown a warranty deed
of the premises, and receive from him nine bonds and
mortgages, aggregating twenty-nine thousand dollars, one
mortgage of thirty-five hundred dollars on each house.   On
November 19th, 1877, McGown assigned this contract to
William Archer, with the defendant's consent, the first pay-
ment thereunder not being reached.   Archer proceeded with
the work, and July 5th, 1878, the plaintiffs contracted in
writing with him to complete the plumbing work in the
houses, according to written specifications, Archer agreeing to
pay them therefor eleven hundred dollars, by giving orders
on the defendant, " one for three hundred and fifty dollars,
*to be taken out* of the third payment, one of two hundred
and fifty dollars *to be taken out* of the fourth payment, and
one of five hundred dollars, *to be taken out* of the fifth and
last payment, when all the buildings are completed under the
terms of the agreement made September 18th, 1877, between
Thomas J. McCahill and James McGown."

On the date of this agreement Archer gave the plaintiff
three orders on McCahill for the several sums therein men-
tioned.   The first was paid by the defendant.   The last two
were in these words, differing in amounts and referring to
different payments provided for in the McGown contract.

"New York, July 5th, 1878.
" Thos. J. McCahill, Esq.: Please pay to Ellison & Todd,
two hundred and fifty dollars out of the fourth payment under
the agreement of September 18th, 1877, between yourself and
Jas. McGown, when that payment is reached, said amount being
on account of plumbing work and material furnished on 126th
Street houses.                         William Archer."

Indorsed as follows :

" Accepted to be paid only when fourth payment is reached
as per contract between McGown and myself and not other-
wise.                         Thos. J. McCahill.
" July 10th 1878."

Ellison *v.* McCahill.

The plaintiffs began the plumbing work about July 10th and completed it prior to July 26th. About August 1st, and before the fourth and fifth payments were earned under the McGown contract, Archer stopped work finally. The defend-. ant, executor of Bryan McCahill, foreclosed a first mortgage upon the premises, and purchased on the foreclosure sale. On October 14th, 1878, he made an agreement with Van Alstyne & Smith, by which they agreed to complete the buildings according to the plans and specifications. When completed the defendant was to give them a deed, they executing the eight mortgages of thirty-five hundred dollars each, and receiving from defendant a sum equal to the unpaid balance due under the original contract with McGown, less certain deductions specified. Van Alstyne & Smith finished the buildings.

This action was brought to recover the amount of the orders, so accepted by the defendant. The trial was had in the Marine Court, before a jury. A verdict was given in plaintiff's favor. Motion for a new trial was denied, and the defendant appealed from the order and judgment to the general term of the Marine Court, where the same were affirmed, and the defendant appealed to this court.

The record does not disclose any contract between the plaintiffs and defendant, with reference to the plumbing work done by the former upon the buildings. Whatever the plaintiffs may have the right to demand in this action, plainly rests in the defendant's acceptance of the two orders drawn by Archer in plaintiffs' favor. It is undoubtedly true that the plaintiffs completed the work under their contract with Archer. This, however, imposed no obligation upon the defendant. Their agreement provides for the giving of orders upon the defendant by Archer, " to be taken out of the payments " provided for in the McGown contract of which Archer was the assignee. These orders and their acceptance by the defendant are the instruments governing the rights of the parties here. By them, the defendant was called upon to pay the plaintiffs certain moneys, from particular payments when reached. The defendant accepted them payable only when such payments

matured.   At the time they were drawn and accepted, there was no fund in the defendant's hands to which they applied, and no right to anything *in præsenti* accrued to the plaintiffs. Their work was not begun, and the houses were not in a condition to entitle Archer, as assignee of the McGown contract, to the specified payments thereunder.   The orders and acceptances gave no date when they would be payable, but their maturity and the defendant's liability depended upon the happening of an uncertain event, to wit, the falling due of certain payments under the chief contract, which in itself depended upon the completion of work by Archer, its assignee.   The money to be paid plaintiffs was not the defendant's, but Archer's when he earned it.   The only responsibility assumed by defendant, was to disburse Archer's funds according to the accepted orders, when he should become the holder thereof, and not until then.   He certainly could not be in that position until the payments to Archer became due.   If the acceptances read to be paid out of the first funds in defendant's hands belonging to William Archer, could the defendant be made liable without proof of having subsequently had the funds? Clearly not, and there is no difference in the case at bar.   This view would seem to accord with the terms of the orders and acceptances, to pay when the specified payments " are reached," under the McGown contract.   I am unable to see how the plaintiffs' position differs in strength from Archer's.   If the latter became entitled to payment, so would the plaintiffs, by virtue of the acceptances, regardless of whether they had or had not done the work called for by their contract with Archer.

It appears from the record that before the fourth and fifth payments were earned by Archer, he abandoned performance of the contract, thereby absolving the defendant from the contingency of future liability to the plaintiffs.   The subsequent completion of the buildings by Van Alstyne & Smith, under an independent contract, did not fix defendant's liability to the plaintiffs.   His liability did not depend upon that happening, but arose only when Archer became entitled to payment.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

Judgment reversed and new trial ordered, with costs to abide event.